Ken BURGE, Appellant,

v.

**AMERICAN QUARTER HORSE ASSO-CIATION, a Texas Non–Profit Corporation, Appellee.**

No. 07–88–0091–CV.

Court of Appeals of Texas, Amarillo.

Jan. 5, 1990.

Rehearing Denied Feb. 2, 1990.

Fitzgerald, Meissner, Augustine & Gunter, Jody W. Sims, Austin, for appellant.

Underwood, Wilson, Berry, Stein & Johnson, D. Barry Stone, Amarillo, for appellee.

Before DODSON, BOYD, and POFF, JJ.

BOYD, Justice.

Appellant Ken Burge (Burge) brings this appeal from a summary judgment in favor of appellee American Quarter Horse Association (the AQHA). The action centers on the AQHA's cancellation of the registration certificate of Burge's stallion, "Just a Freckle." Although enumerating thirteen points of error, Burge focuses on three primary arguments. They are, (1) a material fact issue is present as to whether or not the stallion had white markings beyond the proscribed lines for registration; (2) a material fact issue is present as to whether the stallion's registration application accurately depicts the extent of the stallion's markings; and (3) the AQHA negligently registered the stallion and had a duty to Burge to discover the prohibited markings. We affirm.

On July 25, 1980, "Just a Freckle" was registered with the AQHA by application signed by its then owner, Joan Pendola. The AQHA received information in May of 1986 concerning possible prohibited markings on the stallion. It then requested Burge, the new owner, to supply it with color pictures. A hearing was held on August 19, 1986, at which Burge appeared in person, with his attorney, and presented evidence to support the registration. The Executive Committee of the AQHA conducted an official inspection of the stallion, and when the hearing reconvened on January 27, 1987, it found that the registration application did not accurately depict the extent of the white markings on the stallion. It also found that the white markings extended beyond the lines proscribed by Rule 106(A), *1987 Official AQHA Handbook* and thus cancelled the stallion's registration certificate. Burge refused to return the registration certificate to the AQHA.

The AQHA then filed a Petition for Declaratory Judgment seeking to validate its cancellation of "Just a Freckle's" registration certificate. Subsequently, it filled its successful motion for summary judgment asserting its right to judgment as a matter of law because the registration certificate was cancelled after notice and hearing conducted according to AQHA rules and regulations. Burge responded and alleged that he was not bound by, nor this cause governed by, the rules and regulations of the AQHA, the registration application neither failed to indicate nor misrepresented the stallion's actual markings, the AQHA was negligent in issuing the certificate of registration, the AQHA was estopped to cancel the certificate, the AQHA had waived its right to cancel the certificate, and the suit by the AQHA was barred by limitations.

Burge contends, generally, in his first ten points of error that the trial court erred because genuine justicable issues of material fact are present in this case. In this type of appeal, this Court must follow the well-established rules of review for summary judgments. As Burge correctly points out, under Rule 166a of the Texas Rules of Civil Procedure, the movant, here the AQHA, must establish that there is no genuine issue of fact and that movant is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). Burge also correctly asserts that we are required to view summary judgment evidence in the light most favorable to the non-movant and resolve against the movant any doubt as to the existence of a genuine issue of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.—Amarillo 1979, no writ), citing *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

■ However, Burge's claimed issues are immaterial because of the policy of the courts in the management of the affairs of private, voluntary, non-profit associations. The AQHA, we believe, has the right to manage, within the legal limits, its own affairs without interference from the courts. *See Harden v. Colonial Country Club,* 634 S.W.2d 56, 59 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Hoey v. San*

*Antonio Real Estate Board,* 297 S.W.2d 214, 217 (Tex.Civ.App.—San Antonio 1956, no writ); *Brotherhood of Railroad Trainmen v. Price,* 108 S.W.2d 239, 241 (Tex.Civ. App.—Galveston 1937, writ dism'd).

The AQHA is a non-profit Texas corporation whose purpose is to collect, record and preserve the quarter horse pedigree. The Board of Directors manages and controls the business and property of the AQHA and has the power to make, amend, repeal and enforce rules and regulations not contrary to law or to the by-laws. The Executive Committee is given the same powers as the board except with respect to changing any by-laws pertaining to registration of horses. Before a horse may participate in any AQHA sanctioned event, it must be registered as a quarter horse.

To protect and preserve the quarter horse pedigree, the AQHA has enacted the "White Rule," Rule 106(A), *1987 Official AQHA Handbook,* which excludes other breeds with excessive white markings such as appaloosa and pinto. In this case, the Executive Committee of the AQHA, by a hearing, determined that "Just a Freckle" had prohibited white markings and, therefore, violated this rule. Moreover, subsection F of the same rule provides that any animal having excessive white markings, etc., shall be subject to cancellation of its registration "where the registration application fails to indicate or misrepresents the animal's actual markings." The AQHA also enacted Rule 87, *1987 AQHA Official Handbook,* which provides:

> The registration certificate shall accurately describe the horse for which it has been issued. An owner has an affirmative duty to immediately report any discrepancy to the Association and return the certificate for correction. If preliminary examination indicates the certificate does not describe the horse for which it was issued, upon at least fifteen (15) days prior notice to the recorded owner and hearing, the certificate may be cancelled.

Burge does not contest the due process, or lack thereof, afforded him at the hearing; thus, that question is not before this Court.

It is well-established that the Texas courts will not interfere with the internal management of voluntary associations so long as the governing bodies of such associations do not substitute legislation for interpretation and do not overstep the bounds of reason or violate public policy or the laws of this state while doing so. *Harden v. Colonial Country Club,* 634 S.W.2d at 59; *Adams v. American Quarter Horse Association,* 583 S.W.2d 828, 834 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.); *Hoey v. San Antonio Real Estate Board,* 297 S.W.2d at 217; *Brotherhood of Railroad Trainmen v. Price,* 108 S.W.2d at 241. Burge argues that the AQHA acted unreasonably in its decision and "substituted legislation for interpretation." However, a voluntary association has the right to interpret its own organic agreements such as its by-laws and regulations, and such right is not inferior to its right to make and adopt them. *Harden v. Colonial Country Club,* 634 S.W.2d at 59; *Dallas Athletic Club Pro. Com. v. Dallas Athletic Cl.,* 407 S.W.2d 849, 851 (Tex.Civ.App.— Austin 1966, writ ref'd n.r.e.); *Brotherhood of Railroad Trainmen v. Price,* 108 S.W.2d at 241. Moreover, Burge agreed to follow the rules and regulations and to be bound by decisions of the Executive Committee of the AQHA when he voluntarily became a member of the association.

Burge is aware of this maxim of non-interference by the courts, but he maintains that he has been deprived of a valuable property right and, therefore, the courts must intervene. He relies on *Dallas Athletic Club Pro. Com. v. Dallas Athletic Cl., supra,* to support his position, pointing out that that court refused to intervene because the party appealing had not demonstrated any valuable property right. Burge argues that he has made such a demonstration because he can neither breed nor sell the stallion. He additionally cites the holding in *Hatley v. American Quarter Horse Association,* 552 F.2d 646, 655 (5th Cir.1977) that deprivation of pecuniary benefits resulting from contractual relations can raise a dispute to the level of justiciability.

■ However, the *Hatley* court also held that the AQHA's "White Rule" was a valid exercise of AQHA's legitimate purpose and, on page 656 of its opinion, reaffirmed existing Texas law as follows:

> Texas courts preach and practice non-intervention so long as the governing bodies heed the bounds of reason, common sense and fairness, and do not violate public policy or the law. (citations omitted).

Moreover, in holding judicial intervention necessary in that case, the *Hatley* court noted that the AQHA Executive Committee denied the registration certificate there in question without a hearing and, in doing so, violated "Texas due process." *Id.* at 657. That, of course, is not the case here since it is undisputed that a hearing, after notice, was held. The involvement of a property right does not necessarily authorize judicial intervention in the absence of arbitrariness, fraud or collusion. *Harden v. Colonial Country Club*, 634 S.W.2d at 59. This record does not show reason for such judicial intervention.

■ Burge further alleges that the AQHA has no rule or procedure by which it may cancel the certificate of an ineligible horse that was accurately depicted and that the Executive Committee created an ad hoc rule rather than limiting itself to interpretation of the existing rules. Whether or not the certificate accurately depicted an ineligible horse is not for decision here. As noted earlier, the Executive Committee held a hearing and determined that the application was not accurate. Moreover, the certificate of registration states on its face that the AQHA may cancel it for cause under its rules and regulations. The Committee found that the stallion had white markings extending beyond the lines prescribed by Rule 106(A) and that the certificate may be cancelled pursuant to Rule 87. This falls under the category of "management" with which the courts should not interfere.

Therefore, we must conclude that there is no genuine issue of material fact to be determined and Burge's first ten points are overruled.

■ In points 11 through 13, Burge alleges that there is a genuine issue of material fact whether the AQHA was negligent in failing to examine the registration application, in issuing the registration certificate, and in failing to discover the alleged excessive white markings. He also alleges that the trial court erred in holding as a matter of law that the AQHA owed no duty of ordinary care to him. Our disposition of Burge's first ten points foreshadows our disposition of his last three points. Again, we believe the process of registration and cancellation of registration to be an integral part of the AQHA's internal management with which the courts will not interfere in the absence of deprivation of due process. Under the record, Burge was not deprived of his right to Texas due process. Therefore, points 11 through 13 are overruled.

In summary, all of appellant's points are overruled and the judgment of the trial court affirmed.